Robert Winter  Robert Winter Robert Winter Robert Winter Good morning. May it please the Court? I represent 97 investors in the Stanford International Bank collapse. I know that this Court is very familiar with the facts of Stanford International Bank. My last count is you have entered 16 or 17 opinions reviewing Judge Godbee's decisions in the Stanford International Bank case. I would like to state your name for the record. Thank you. That would be a good idea. Randy Pullman. I'm with Pullman, Cappuccio, Pullen, Benson & Jones in San Antonio. Thank you for the reminder, and it's a pleasure being here this morning. We are discussing this morning a case that has been pending for six and a half years with the receivership and my client's particular case that has been pending for six years. The only thing that has happened in six years on the case that I filed in Bexar County, Texas on behalf of Mr. Rupert and a second case on behalf of Mr. Reshmogway is that there has been a removal, a remand, and after the cases were remanded back to state court for lack of federal court jurisdiction, Judge Godbee stayed those cases. When you filed your motion to lift the stay, did you challenge the stay or just ask that it be lifted with Judge Godbee? When we filed the motion to lift the stay, essentially the second time after it had been remanded, we only asked that it be lifted. We did not, my recollection is we did not attack the validity of the stay itself, and candidly, in my mind, that's a distinction without a difference. Well, one's the when key factors and the other's your claim that under Ritchie, the Ritchie test, the court lacked authority to extend its order. I'm not fond of arguing that a federal judge doesn't have authority to do whatever it is that he wants to do because I think federal judges have very wide discretion and latitude. Okay, so the first pages 9 to 14 of your argument, you're not really pressing? No, I'm still pressing them, but I'm doing it in the context of Winkie because I think the court still has to consider whether this particular stay on these particular facts should have been entered in the first instance. I don't think it matters to the outcome. You didn't appeal that. But in the first instance, you didn't appeal the stay. You're only appealing a subsequent denial of a motion to lift, right? That is correct. That's Judge Benavides. That is correct, Your Honor. We are only appealing from the second order, and here's the reason why. When the initial order was put in place, I was of the belief, and I'm the person that made these decisions, that Judge Godbee had some discretion to stay our case, and it would depend under the first Winkie factor whether the appropriate time had come. What made the decision for us and what I think really turns this case here today is that there are now five other cases pending before Judge Godbee arising out of the same facts vis-à-vis Willis and the insurance brokers that no stay has been entered. That's an abuse of discretion. Whether we appealed from and challenged his ability to enter a stay in the first instance, when you look at how that stay has now been implemented, it just doesn't make any difference. So you're saying change circumstances, which is an exception to your obligation to appeal originally. You've said now that more time has elapsed and there have been these other cases. Yes, sir. Yes, okay. Sure. So that to me sounds like the Winkie factors, but go ahead. Whether we call them the Winkie factors or the Ritchie factors, rather, again, to be absolutely candid, coming to the Fifth Circuit and arguing that a federal judge doesn't have jurisdiction to do what he's doing, not an argument that I was interested in making two or three years ago. I was happy. Sometimes they don't. And sometimes they don't, but it was not an argument. They don't have the ability to make decisions if the issues aren't resolved before the district court. Sometimes you don't, but in this case, you do. What's the best case? I agree it's a wrinkle, and I think the district court, at least in one paragraph, understood it to be a wrinkle, that he's allowed several cases. But do you have any case that says that alone proves abuse, or what factor do you think that goes to? So I think it goes to the first factor under Winkie. Injury to you, disparate treatment? It's disparate treatment. It's absolutely disparate treatment. I went back yesterday, and I read every case that is mentioned in the briefing. I went beyond that. There are no cases where a federal district judge has allowed litigation to go forward in front of him, but not allowed it to go forward in state court by a different plaintiff. You practice in this area, so you'll know it better than I do. You may have an immediate answer. What about a judge that says, well, I need some bellwether litigation. Let's go ahead and test one or two so I can see the vulnerabilities of the estate. Why wouldn't? No. The estate's not a party to this. The estate assets, that's the Ritchie claim. Is there a threat to the estate assets? And there isn't. And I want to point— But see, that's where you get back to the argument that you aren't pressing, and that was troubling for me because if the test in Ritchie is as you described it, is there a threat to the assets? I didn't see a single citation to the record, not one, in pages 9 to 14 of your brief. You cite the complaint. You don't cite anything to support the argument that there's actually no threat to the estate assets. Because the Fifth Circuit answered that question, Your Honor. We answered that in which case? In Janvey v. the Democratic Senate Committee, I forget the exact name, but one of the Democratic Committee cases, here's what it boils down to. The estate, the receiver, simply doesn't own my client's claims. This court has held, and this was the assumption we were working under from the very beginning because recall, and you'll see it in the record, we asked the receiver, do you have any objection to us going forward? But I thought since then they've asserted identical claims, similar claims at least. They have asserted identical claims. They don't have standing to assert those claims. That's the significance of Janvey v. the Democratic Committees is that they simply don't own them. When we say identical claims, I think we have to be very specific here. Who has standing or who has the ability to bring those claims? Doesn't it still affect the creditors? In other words, you're a creditor. There's other creditors that Janvey can represent. Maybe they can't represent yours. But they all, in effect, affect the creditors and the potential distribution of assets. And the cases that the judge has allowed to proceed that are in your posture are all in the federal court where he feels that he has a little bit more power to oversee them and oversee Janvey and the way that Janvey might prioritize the different creditors' claims. Why isn't that both a justification for continuing to stay and treating you in a way you say it's different but provide a justification for him allowing those other ones that he could control to go on? Because we are not suing the receivership estate. We are suing Willis and Bowen McClitt, and the name is Bowen McClitt. Those claims will not result in any impact at all to the estate. When I sue these— Coletta, the decision they're relying on, similar, right? The suit was against agents and people, quote, closely aligned with. There may be a case on those particular facts where it has an impact. It doesn't in this case. When we get back to state court under Texas procedure, these defendants will file what's called a Chapter 33 designation of responsible third parties. That will trigger my right as the plaintiff to then sue the third parties. Those third parties are going to be everybody in the estate. It's going to be the receiver, the bank. I'm stayed from doing so. I'm not coming back to this estate to make a claim. These defendants aren't coming back to make a claim against the estate. They have said so. The receiver has said so in their amicus brief, and I want to spend a little bit of time on that. But, Your Honors, that's a red herring. Are there plaintiffs in your suit that are also plaintiffs seeking relief through the receivership process? No, sir. Well, hold on. Hold on. Excuse me. Through the receivership process, yes. My clients, for the most part, have filed claims in the receivership. They will receive pennies on the dollar through the receivership. Those clients are also suing Willis and Bowen McClitt as a third party. It is those third party claims that this court in Janvey v. the Democratic Committee says the receiver doesn't own. That's just another remedy that is available to my clients. It's just another pocket, right? Beg your pardon? It's just another pocket. It is for my clients. That's right. There are lots of other third party litigation that's going on out there. We are suing Willis and Bowen McClitt. I want to direct Judge Higginson, Judge Clement, Judge Benavides back to two opinions in particular from the Fifth Circuit. One of them is the corrugated box case, the corrugated container case, which is mentioned in the briefing by Willis. In that case, the Fifth Circuit properly enjoined another state court class action that was filed in South Carolina by the same plaintiffs, by the same attorneys, raising the same claims, and it was a class case. And it would have resulted in res judicata. It would have been precluded by res judicata had it gone forward. If you look at the corrugated box case and compare it to this case, wholly and completely different. Different plaintiffs, different lawyers, and most importantly, not a class. We are not pursuing a class action in state court. If we were pursuing a class action in state court, then I think Judge Godbee would have had some discretion to enjoin just as the Fifth Circuit or one of the Southern District of Texas judges did in the corrugated box case. We're not pursuing a class action. That's why we sued in Texas state court. That leads to the second important distinction. There is no federal court jurisdiction for my cases. We are the master of our own pleadings. We think the claims that work here, that truly work, are the violations of the Texas Insurance Code. We're suing insurance brokers. There's no diversity jurisdiction here. We have brought a 33 Act claim. We did not bring a 34 Act claim. I'm not comfortable that the plaintiffs are ever going to be able to prove scienter. I can't emphasize to you enough that we are the masters of our own pleadings. And if Judge Godbee and if the receiver wants to know what it is that we're doing in our cases, there are measures far short of a death penalty sanction. That's essentially what this is, is a death penalty sanction. There are measures far short of that that he could use to understand what we're doing. If the receiver wants to monitor the case, we'll be happy to send him quarterly, biannual reports. We can put him on every pleading. That's a little ridiculous on the certificate of service, but we can report to him. The court can order that. If the class action status makes a difference, as it would under the corrugated container case, then he can enjoin us from filing a class action. That's fine. That would not be an abuse of his discretion. But to flat out say you can't go forward, that's abusive because no lesser remedies were considered. There was no discretion there. Now, I do want to address the filing of an amicus brief by the receiver. That came out of the blue. That was a change in circumstance. That would have changed the briefing had the receiver told us in 2012 and again in 2013 that now they were interested in pursuing these kinds of cases. We could have had a discussion. But really the only thing that matters in the amicus brief, all of the factual recitations about what they're doing, I'm sure the court's going to ignore those because that's not how you get it in the record through an amicus brief. But the one argument that they make that I think does get some traction is the red herring I discussed a few minutes ago. The receiver is never going to be a party to this case. If that were a reason for my case not to proceed forward, that would be a reason for all five of the cases in Judge Godbee's court not to proceed forward. In this case, do you mean your state court action? Yes, ma'am. In the Rishmagway case and in the Rupert case. The arguments that they make apply more as an abuse of discretion than anything else. Thank you. Save time for rebuttal. May it please the court. My name is Stephanie Kenyar, and I'm here representing Ralph Janvey, who is the court-appointed receiver. I'd like to begin speaking about SEC v. Coletta, a case that Judge Higginson mentioned. And I think that case is important because it shows what it is that the receivership court can do and should be doing in protecting the estate. Now, in Coletta, the receiver entered into a settlement agreement with third parties. That settlement agreement obligated the third parties to give money to the estate on the receiver's claims, but it also included a bar order. And that bar order said that investors couldn't turn around and bring their own claims against those third parties. This court affirmed the district court's decision. And the rationale behind it was because the court has to make decisions that enable the estate, in this case 20,000 different claimants, to be able to recover assets. And the court has broad discretion in doing that, even if in some cases recovering for the whole means that certain individual claims are not going to be brought. Now, the main argument that the appellants have raised is that there is no valid distinction between them and the cases that have been allowed to go forward. But the district court identified some real distinctions, the main one being that the two different forms means that the district court, which is in charge of administering a $7 billion receivership, cannot have control over how the cases go forward in state court, how much discovery is demanded from the receiver, whether inconsistent findings and remedies are imposed on a group of defendants that the receiver is trying to recover from for the entire estate. Now, it is not the case that the district court can't treat plaintiffs in different ways. There are several cases cited in the briefing where the district court allowed estate to be lifted for some plaintiffs but refused the same thing for others. One of these is SEC v. Vesker Capital, which is a Tenth Circuit case from 2010. And in that case, there were two lenders who had same harms who were trying to get estate lifted so that they could bring claims against the receivership estate. The district court allowed the estate to be lifted to one because they determined it was a usual lender but not to the other because they determined that lender was more like an investor and should wait in line with all of the other investors. Likewise, the Ninth Circuit and SEC v. Hardy upheld the district court's decision to set a firm end date on a filing of claims with the receivership estate. Now, some plaintiffs completely missed the end's claim date. They weren't able to bring a claim at all, and that meant they couldn't recover anything that the receiver was able to get on behalf of the estate. And the Ninth Circuit said that exercise of discretion is permissible because it enables… …to examine this and whether there's an abuse of discretion. Yes. Did the district court have a hearing on this? I don't believe there was an actual hearing, no. It had multiple briefs on it. But its conclusions on each of the factors are only one sentence long. Yes, but in its order, it specifically refers to the conclusions that it made when it entered a longer, more detailed order in 2012. Well, but specifically, that's a decision it made three years earlier, and the winky factors are very time-sensitive. The winky factors are time-sensitive, but the timing factor that changes with the winky factors is the question of whether or not the receivership is in a place where things have changed so that the estate ought to be lifted. And here, the district court has been overseeing this particular receivership for six years, and some context is important. I know that the court is familiar with this receivership, but when the SEC shut down Stanford, the discovery that the receiver made is that the vast majority of assets are just gone. This receivership is somewhat different than a lot of other receiverships because the way in which we are going to recover funds for victims is through litigation. So while in other cases, six years might be a long time and a receiver would be able to distribute, in our case, we have 18 cases going to trial in the next 18 months. We have 15 pending appeals. This mass of litigation, that is where the assets are, and that is how we're . . . Does that litigation include the brokers that are being sued, that have been stayed in state court? The ALGAR litigation, it does, yes. Those cases are included, and that appeal will be in front of this court in December. Oh, great. You know, the timing of this case is a little bit different from others because it will take time for all of this litigation to go through. And the district court needs to be able to control the pace of that litigation, just as the receiver needs to be able to monitor it. We can do that in district court, but if a flood of cases arrives in state court, not just these two cases, but three others that have also been stayed that bring the same claims in other state court cases, the receiver will have to expend so much time and resources monitoring, intervening, and with the threat of those assets being dissipated in those state court actions, that he will not be able to do his job in district court. Thank you. You may have pleased the court. My name is Jonathan Polks from Weill-Gottschall, and I'm here arguing on behalf of the appellees. Good morning, Your Honors. Let me start with there were three cases, Your Honor, that this court has already decided upholding Judge Godby's discretion to impose and not modify the stay as to other third parties. They haven't been discussed yet today. The first of those, which it's SEC versus Stanford International Bank, but I'll call it the Sasser case because that was the lead defendant, and that's how it's been referred to, which has been ignored so far, is basically every reason that Judge Godby used here to refuse to lift the stay is one that was affirmatively acknowledged and recognized by this court already in the Sasser case. That was a case, Your Honors, will you recall there was a plaintiff, quite sympathetic, I'll say, a retiree who'd lost all her money, who wanted to pursue arbitration claims against her financial advisor. And that, those actions, hers and others like it, were stayed by Judge Godby, and the same issues were raised as are being raised now. It didn't, the stay didn't, it was in place, the receivership stay didn't cover those kinds of actions, and furthermore, it should have been lifted for a variety of reasons. They were filed in the same court? They were going to be filed in private arbitrations. Pardon? They were going to be private arbitrations against the financial advisor. And specifically, the reasons that this court sort of acknowledged and blessed, in effect, as to why it couldn't proceed is, first of all, any recovery that would have been obtained by those plaintiffs was deemed to be a potential asset of the receivership. And therefore, there was competition over the same pot, in effect. It's exactly the same thing here. You have an identical lawsuit, and the plaintiffs. The standard in a Ritchie, and I don't think our courts really disagreed or others, isn't just is there a potential asset, right? It's got to be an identity of interest, privity, immediate adverse economic impact. Every test that I extract from Ritchie is more than just potential. Let me, actually, I think the court was pretty explicit in Sasser that it was potential, a potential asset of the estate. If I can read it without my glasses on. I think you're right. That's an unpublished decision of ours, and it's a lot, it's years old. But that's a good point. But it's in this case. It's a Stanford financial case. I'm calling it Sasser, but it's really SEC versus Stanford. Do you think the circuits have different standards? No. Unusual circumstances exception? I don't, actually, Judge. I think the issue is, personally, the way I would view it is that the test doesn't really, the test is just sort of a useful tool. The real issue is does the language of the receivership stay in this case apply, or doesn't it? But at some point, a blanket stay forever would be found to be an abuse of discretion. Sure. And there isn't one here. I know you have that position, but it's pretty thin. I mean, the sentence, the first factor he resolves by saying, look at what I said three years ago. The second factor he says, well, it's relatively young. Look at this collection of cases. But in that collection of cases, you probably know these footnotes by heart. Is there any case that has the amount of time that's elapsed as this one? We're up at around, what, five or six years? Well, we are, but let me make a few points in response to that, Your Honor. So is everybody else, first of all. Everybody else may be, but is there any case that he cites that had that length? You know, I haven't done that analysis. So first answer is I haven't done that analysis. I don't know. But if he's now sued the same defendant, that implies strength of merit. No, I don't. Well, I certainly wouldn't agree to that, Your Honor. All we've done so far is have motion to dismiss practice. So obviously, by definition, that doesn't say anything about the merits. But the motion was dismissed tonight, right? Yes, it was, which means that their allegations were deemed sufficient, but they still haven't proven anything. But look, the fact of the matter is that there's been a concession right now that the litigation that this plaintiff, the appellant here, has brought is identical to that that's been brought by the receiver in the receivership case. It's identical to the class action that was brought, out of which these same plaintiffs are members, which was a factor in this Court's corrugated container case. They were already members of that class. And not only that, but more than two-thirds of the appellants here, the individuals, have actually posted claims with the receivership and started to take money out of it. So they're the beneficiaries of everything that's going on. And that's probably a good opportunity for me to identify some facts that are in the record, but I think they're important here. Because we all know that we're dealing with a monster of a receivership. Judge Gabbi has an incredibly difficult job. And what he's done in terms of coordinating all the various interests is there is something called the Official Stanford Investors Committee, which has the receiver as well as the individual plaintiff's lawyers on it. They liaise with the Court on a regular basis. There have actually been a couple of settlements now which have involved all of those parties. There have been rulings that the judges made which cut across the cases. So he's making law of the case in an effort to enhance efficiency. And all that's going on. And that's his job. That's what he's trying to do to enhance the receivership. And the receiver's trying to maximize assets. I don't think it's even a close call. I don't think it passes the smell test to allow a particular group of people who are beneficiaries of all that because they're taking money out to maintain their own separate lawsuit in state court that alleges the identical things, to say that that's an abuse of his discretion, to say that has to wait while this very complicated process that he has in place moves forward. I don't see how that's even a close call. And in that regard, let me add a couple of other things in terms of what the practical realities are of that. The appellant made some point about how they're not really seeking any assets of the estate. First of all, as I mentioned, this Court's already endorsed the idea that a potential asset of the estate is an asset of the estate and you can't have competition over it. But second of all, it is completely unrealistic. Let's just be very practical here. My client, Willis, and the other aiders and abettors are all charged as aiders and abettors of Stanford's own misconduct. So whether he sues them or whether we point the finger at them in the context of the litigation, they're going to be in it. So you can only imagine what would happen if in state court, while everyone else's discovery is being coordinated and organized in federal court... So, for example, there would be probably one or two omnibus depositions of a key Stanford witness that will be organized and set and the Court will have rules and parameters around it. State court, meanwhile, is running ahead willy-nilly with depositions of all those witnesses, any of whom, if they make unfortunate concessions, and I hope they do, which would undermine the receiver's case, is going to have incredibly real binding consequences for the receiver. That's the reality of it. So the receiver has no choice but to actively participate in those state court proceedings, which this Court has already found, in connection with the Stanford cases, is another reason why the Court has discretion to stay the action, because the receiver is depleting assets by monitoring these state court cases that would otherwise be going to the benefit of the investors for whom this whole thing is designed to protect, and it's going to waste its time and money intervening in the state court proceeding. There's no avoiding that if that case was allowed to go forward. You'd think that that simple proposition would have been stated in other cases like this. It is. Monitoring and intervening itself is a depletion of assets. Yes. It's been stated several times, including by this Court. In which case? Sasser. Again, which, again, I won't call it Sasser anymore. I'll say in this very case. It's SEC versus Stanford Financial. This Court recognized that one of the factors which should be considered under the wanky test in terms of whether or not the stay is... is the fact that requiring the receiver to waste receivership assets, which are really there for the benefit of the investors, running around chasing extraneous and collateral litigation is a waste of time and money, and is a factor itself which entitles the district court, in the exercise of its discretion, to find that that third-party action should be stayed. And the Court here recognized that. That was recognized in the Sasser case, and it is in a number of the others. It's also in the corrugated container case. But... I'm sorry? It's stated by Judge Godby as the reason for staying the state court. Your Honor, I believe it was, but I don't want to... I have to check. But let me say this, then. Sasser's the one in May, and then there's the June. Same panel. Sasser is 424, Fed Appendix 338. Same panel, yeah. Yeah. May 5, 2011. But you can't predict how much longer this stay will be necessary. Of course you can't. Well, I can't, but what I can tell Your Honor is this, that, as I say, the judge's efforts are really starting to bear fruit here. There have been, very recently, two proposed settlements. I believe one was approved under his auspices, which included the receiver and included individual plaintiffs  in which the model was that the recovery to the investors would pass through the receiver. So that's just starting now. And again, allowing the state court claims to proceed would have a devastating impact on all of that, would inhibit and slow down the recovery. And these appellants, I can't say it enough, are themselves beneficiaries of that process. It's terribly unfair to allow them to benefit from what's going on in the federal court because of all this organization and coordination the judge has imposed, and at the same time allow them to throw bombs at it by trying to proceed in their own case. Would the state parties, the petitioners and the defendants, be part of this settlement? Yes, of those, yes, they would. Absolutely. They would be, because those settlement funds are going into the receivership, they will be distributed pursuant to whatever distribution process the receiver has designed. But what funds come from the same defendants that are defendants in... Those settlements are in different Stanford cases, Your Honor. There was one that involved the accountant, BDO Seidman, which was the accountant for Stanford's broker-dealer. I believe that one has been proposed but not yet approved. There was another that was Adams & Reese, which was one of the law firms that represented Stanford. I believe that one was proposed and approved already. So these defendants, these brokers in the state action, would they be potential assets for later litigation, once the stay is lifted, that would not be part of the assets that would go through the receivership at this point? That's correct, because the insurance cases, which are the ones that we're specifically talking about here, are not part of the settlements. But again, I just want to make the point that this just shows you how big an octopus this case is and how much effort Judge Godbee has to put into managing it all. And again, I don't think if the standard is abuse of discretion, and this court, this court on three different occasions has reemphasized how much discretion the district court has, and it ought to. This is an incredibly hard job Judge Godbee has. He's closest to it. He's in the best position to say what he can manage and what the receiver can manage in an effort to maximize assets for all the investors, not just a particular group. Remind me, because he didn't elaborate much, what about the cases that were allowed to go? How is he distinguishing? I think that's such an easy issue, Your Honor. Those cases were all before him. Those plaintiff's lawyers were all part of the official Stanford Investors Committee. That's all going to be on the same schedule, and he's making great efforts. If these plaintiffs were in federal court, they'd be allowed to go forward, too? Yes, and they were, by the way. I mean, I have to say, Your Honor, that there's sort of an aspect to this where there is clear... Notwithstanding what the appellant said during their argument, of course there's federal jurisdiction here. They brought a 33-act claim, so they had the option to go into federal court. They chose not to, and I will add that the first time they brought the case, when Rupert was originally brought, I think 2010, it was brought in violation of the stay, even though they knew it existed. They didn't ask for leave. So they filed in state court in violation of the stay, and we were moved. By just allowing the state proceeding to go on, but enjoining the enforcement of any judgment. In other words, the problem that I see is that it implicates the state in that if the plaintiffs are correct, Sanford would be liable under Texas law if these people aided and assisted him in his fraudulent activities. So Sanford liability, clear risk of liability, exposes the receiver to a situation where less money may be available in the estate to divvy up among the creditors. However, if a judge simply enjoins any enforcement, and perhaps I'm wrong, maybe this can't be done, but I thought it could be done, then the federal judge can oversee that when and if there's a judgment that comes out of this independent action that doesn't belong to Janvey, but that potentially affects the estate that Janvey is exercising his receivership over. Your Honor, the issue that you raise, which is does a stay of the judgment fix this, it addresses one problem, but it leaves at least two others that are equally as profound. As I mentioned before, and let me read from the Sasser case, because I read it so much, but it's directly on point here. This court approved the following reasoning. The district court found it highly likely that the financial advisors would argue as a defense that the Stanford companies were at least partially responsible for the investors' losses. That is certainly true here, as Your Honor just recognized. And then this court went on to say, and the district court found that the receiver's ongoing duty to monitor and possibly intervene in ancillary actions would cost the estate in money and efficiency. That's true here in spades, because as Your Honor just said, the question of Stanford's own responsibility and role of this will be the centerpiece of the entire case. So setting apart the fact that there's only one pot of money at the end of the rainbow, and your issue addresses that in part, Your Honor, saying stay that judgment. The receiver here... ...in that lawsuit, whether it's now or whether it's later, he's still going to have the same duty to monitor it and perhaps spend money, whether it's today or five years from now. Well, it'll be a very different issue, Your Honor, after the discoveries taking place in the federal cases, right? It'll be completely different. Once the principal Stanford witnesses are locked in in their testimony and their depositions, once the documents... Imagine the privilege issues that are going to come up in the federal case with the discovery disputes, with the Stanford... winning arguments, winning some and losing others just about what documents have to be produced, the timing on which they have to be produced, what witnesses will be deposed and when and what they say. All of that will come up first, if allowed to happen, in the state court action. The receiver will have to deal with those issues there. These are very practical and real and, I think, unavoidable concerns. It's a completely different thing if it comes up in the context of the state cases, Your Honor, after it has already come up in the federal case. And again, I have to add here that these are issues entirely of the appellant's own making. I realize my time is up, Your Honor, so... But you said you had two answers to Judge Benavides. You've described the first. What I said was that there were two issues that don't get addressed by his stay of the judgment concern. One is the fact that the Stanford... But forget that one. You've described that one. Stanford's role will be the centerpiece. The other is the obligation that the receiver will have to monitor those proceedings. They're related. They're two different ones, though, as recognized by this Court. Final question. Yes. He emphasized Janvey versus Democratic committees. Yes. I'm forgetting that decision. What's your thought about that decision? I think the reason he's bringing it up, and ironically, this is a place where we happen to agree with the appellants, but it doesn't matter for this purpose, and I'll tell you why. The receiver brought the identical case to that that was brought by the class plaintiffs and, indeed, by the appellants here, which was this aiding and abetting theory that Willis and BMB by providing these insurance letters to Stanford helped Stanford perpetuate the fraud. We argued below that the receiver had no standing to bring those claims because those were really investor claims, and in DSCC, what this Court ruled, the holding was that the receiver had standing only to bring claims on behalf of the estate but did not have standing to represent the investors. Judge Godbee... And we moved to dismiss on that basis, and Judge Godbee, following the receiver, came up with a rationale why DSCC was not a bar. So we actually agree to the extent the appellant here was saying, well, those claims aren't valid anyway because they don't have standing. That may well be true. I hope it's true, but you guys are going to have to decide that years from now because, right now, the law of the case is that that's not true, and they've been allowed to proceed. So I think that's why it's valid. Clement is not one of you guys. You folks. Your Honors. All right. Thank you. Thank you very much, Your Honor. Mr. Palmer, you have 5 minutes for rebuttal. I think the panel needs to take into account who it is that is making the arguments that Mr. Polk's just made. Mr. Polk's is a fine lawyer, but he's representing the defendant. I think, again, he makes our point. The cases have now been pending for 6, 6 1⁄2 years, and the depositions haven't even started. They're not going to start in the Willis case until sometime after December when this Court apparently, and I don't want to go too far astray from the record, when this Court will hear the appeal of the 12B6 motion or the class certification motion. We are the masters of our own pleading. For all of these reasons, we'd like to proceed forward on an individual basis in state court. I heard Mr. Polk's do a very good job of trying to articulate how the receiver's asset would be at risk here, and I still don't get it. All that these gentlemen are going to do, all that Willis is going to do, is designate the bank itself as a responsible third party. Under Texas practice, that's going to shift it to me to decide whether to sue them. I can't. The stay order is very clear. I'm not going to sue the bank. You can enjoin me and stay me from suing the receiver.  We don't propose to do that. And so, based on some of the questions that have come, particularly from Judge Benavides, our claims against Willis, which is an $8 billion capitalized business, are not assets of this estate. Unlike the Sasser decision, and I just pulled it out and read it very quickly, the issue there was the financial advisors, who were individuals, had an insurance policy. And the question is whether the insurance policy would be depleted. Those claims against a fixed amount of money on an insurance policy, I can understand. I get that. Claims against a company traded on the New York Stock Exchange with an $8 billion capitalization on claims by my client for approximately $50, $60 million in claims of about $4 or $5 billion net amount from the receiver, we don't have that issue. There are plenty of assets here on the Willis side of things to satisfy everybody's claims. ...claims that you might have against Stanford that might derive from your claims against the defendants in your case? There are claims that could derive, Your Honor, but we're not making them. We're stayed. That defendant, Stanford International Bank, is in receivership. It's dead. I feel like I'm not getting this point across. There is no path by which my claims against Willis and Bowen McClitt end up back with Stanford International Bank unless I sue them. I haven't sued them. I didn't sue them six years ago. I'm not going to sue them six years from now because I'm stayed. The opposing counsel said that your clients were represented in the potential settlement they're putting together in Judge Godbee's court. Is that not correct? There are settlements going on. There's not a settlement that I'm aware of with Willis, but let's say that there were. At some point, the class counsel will come to Willis. Who knows what they're going to settle for? I'm not optimistic, but who knows what they're going to settle for? My clients have the right to opt out of that class. We don't think that a federal court class proceeding is the right way to go. We didn't think that six years ago. We think it's a Texas state court insurance claim. And so what they're really trying to do, here's what they're really trying to do, and I hope this court won't fall for it. Willis says, I want to be sued by the receiver and the investor committee. This court says the receiver can't make claims on behalf of the individual claimants. You stay my case. You affirm this stay. It's a death penalty sanction. We never get to first base. We lose the race. We can't even compete in the race. Willis then files a motion to dismiss against the receiver because the receiver, under this court's opinions, doesn't own the claim. If you think Judge Godbee had the discretion to enter a stay, remand this case back. Instruct Judge Godbee to enjoin us from bringing a class and to report to the receiver as often as they would like. That's a proper use of discretion. Thank you so much for your time this morning.